IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FOCAL POINT, LLC, an Illinois Corporation, | ) ) ) |
| Plaintiff, | ) ) Case No. 1:19-cv-5115 |
| v. | ) ) Judge: |
| KENNETH CZECH, | ) ) ) |
| Defendant. | ) |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Focal Point, LLC ("Focal Point"), by and through its attorneys, for its Complaint for Injunctive Relief and Damages against Defendant Kenneth Czech ("Czech"), alleges as follows:

**INTRODUCTION**

1. This action arises from the deliberate and extensive misappropriation of a significant amount of Focal Point's trade secrets and other confidential information by its former Vice President of Product Development and Design Engineer, Kenneth Czech, and, on information and belief, the actual and threatened disclosure of that confidential information to Czech's new employer, DMF Lighting, a competitor of Focal Point, in violation of federal and state law. This action also arises from Czech's breach of his Confidentiality Agreement with Focal Point, attached hereto as Exhibit A (the "Agreement").

2. The immediate purpose of this lawsuit is to secure temporary and preliminary injunctive relief (i) to maintain the status quo, (ii) to prevent the actual and threatened misappropriation and use of Focal Point's confidential information, and (iii) to enjoin Czech to comply with his obligations under the Agreement. Absent the relief requested in this Complaint,

1

Focal Point will suffer irreparable harm as a result of Czech's misappropriation and inevitable use of Focal Point's confidential information.

## THE PARTIES

3. Focal Point, LLC is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 4141 S. Pulaski Rd., Chicago, Illinois 60632. Focal Point is an architectural lighting manufacturing company that designs, develops, manufactures and sells throughout North America commercial lighting products.

4. Until April 12, 2019, Czech was Focal Point's Vice President of Product Development and Design Engineer working and residing in Illinois.

## JURISDICTION AND VENUE

5. The Court has personal jurisdiction over Czech and venue is appropriate in this judicial district because, pursuant to Section 11 of the Agreement, Czech has submitted to personal jurisdiction of the courts of Illinois: "I waive change of venue and consent and confirm personal jurisdiction on the state and federal courts located within the state of Illinois." Jurisdiction is also appropriate against Czech because he is a resident of Illinois, and he committed the acts complained of in this Complaint, in whole or in part, in the State of Illinois.

6. The Court has original jurisdiction over misappropriation of trade secret claims under 18 U.S.C. § 1836 (c) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events giving rise to these claims occurred in this district, including Czech's threatened breaches of the contractual duties owed to Focal Point.

## FACTS

8. Focal Point is an architectural manufacturing company that designs, engineers, develops, manufactures and sells commercial lighting products throughout North America. Focal

Point's products cover all applications of lighting including architectural troffers, downlights, linear suspended and recessed luminaires, including perimeter and cove solutions. Focal Point has developed and continues to advance the broadest program of intelligent luminaires on the market by offering a wide range of lighting products that can interface with popular whole-building lighting management systems.

## FOCAL POINT'S MEASURES TO PROTECT ITS CONFIDENTIAL INFORMATION

9. Focal Point's ability to preserve the confidentiality of its confidential information is critical to its success. Access to Focal Point's confidential information would give any of its competitors who acquired such information an unfair competitive advantage. At a minimum, a competitor would be able to use Focal Point's confidential information to compete unfairly by undercutting Focal Point's product development, engineering, pricing, marketing and service offerings to current and prospective customers.

10. Accordingly, Focal Point has implemented comprehensive measures to protect and maintain the confidentiality of its sensitive and proprietary business information, including but not limited to requiring employees, like Czech, to sign confidentiality agreements, implementing written policies identifying Focal Point's confidential information, prohibiting employee disclosure, and establishing safeguards against electronic access to or use of Focal Point's information.

11. In addition, Focal Point requires employees to have an electronic access card; restricts access to confidential information to only those employees with a need to know such information; restricts access by non-employees to only those having specific authorization or permission; restricts computer access by user name and password and privacy tokens; and restricts access to certain areas of its facility to authorized employees only.

3

12. Attendance at management meetings where such confidential information is discussed is physically limited to those with a need to know. Independent contractors and other third parties who have confidential information disclosed to them are required to sign non-disclosure agreements.

13. Focal Point has also implemented and maintained numerous policies outlining its security measures and expectations concerning privacy and communications, including its Focal Point's Computer and Internet policy, its Confidential Information policy, and its Cell Phone and Data Capable Devices policy.

**THE CZECH AGREEMENT AND FOCAL POINT'S CONFIDENTIAL POLICY**

14. Focal Point hired Czech on or about November 2012.

15. In consideration for his hiring by Focal Point, Czech executed the Confidentiality Agreement (Exhibit A) dated November 13, 2012 (the "Agreement").

16. Thereafter, Czech began his employment with Focal Point as the Vice President of Product Development and Design Engineer.

17. In his capacity as a Vice President of Product Development and Design Engineer, Czech was the lead product developer and design engineer. Czech served as Focal Point's primary liaison with its outside patent counsel and intellectual property counsel to secure protection of its trade secrets and other confidential information. In this position, Czech routinely had access to and helped prepare each patent application filed by Focal Point, and his files and emails contain attorney-client privileged communications concerning these trade secrets. Czech also served as a key designer of any new products that Focal Point would launch. Moreover, Czech had extensive contact with Focal Point's vendors which provide the materials for Focal Point's products. Finally, Czech had knowledge of Focal Point's pricing along with the cost components of Focal Point's products as well as the proprietary manufacturing process for Focal Point's products.

18. On April 12, 2019, Czech resigned effective immediately and without providing any advance notice.

19. On April 15, 2019, Focal Point sent a letter to remind Czech of his obligations to Focal Point under the Agreement, attached hereto as Exhibit B.

20. Under the Agreement, Czech contractually agreed not to use or disclose Focal Point's confidential information for any purpose other than to advance and support Focal Point's commercial interests. The Agreement provides, in relevant part:

> EMPLOYEE acknowledge that the Confidential Information is Company's valuable and unique asset, and that use or disclosure of the Confidential Information could cause irreparable harm and loss to the Company. **Therefore, EMPLOYEE agrees that he/she will not directly or indirectly use, exploit, copy, disclose to any third party, or use Confidential Information for their own benefit, or the benefit of any third party, for any reason during the period of employment or anytime thereafter, including in pursuit of any Competitive Business. At Company's request, EMPLOYEE agrees to deliver to Company all documentation containing Confidential Information, and any copies or records thereof, together with any tools, equipment, and parts fabricated or assembled with Confidential Information, which he/she acknowledge belong solely and exclusively to Company, including, without limitation, any and all patent, copyright, or trademark rights in connection therewith.**

Agreement ¶ 4 (emphasis added).

21. The Agreement defines "Confidential Information" as:

> information or material (1) which is not generally available to or used by others, or (2) the utility or value of which is not generally known or recognized as standard practice, whether or not the underlying details are in the public domain. "Confidential Information" includes (1) information or material or items which relate to FOCAL POINT's know how, compounds and compositions, techniques, research and development data, pricing, customer lists, accounting and other business data, financial records, specifications, drawings, designs, inventions, samples, tooling, components, formulations, procedures, marketing practices, suppliers, catalogues, data and other material relating to FOCAL POINT's business, (2) information qualifying as trade secrets as

5

> defined in the Illinois Trade Secrets Act, 765 ILCS 1065/2, and (3) any information of the type described above which FOCAL POINT obtained from another party and which FOCAL POINT treats as proprietary or designates as confidential, whether or not owned or developed by FOCAL POINT.

Agreement ¶ 1(c).

22. Czech further agreed:

> EMPLOYEE shall hold the Confidential Information in strict confidence, and use it solely for his/her individual work activities. EMPLOYEE shall not disclose the Confidential Information to subordinates, co-workers, or to others outside the Company without the prior approval of an authorized representative of FOCAL POINT.

Agreement ¶ 3(a).

23. Czech's Agreement contained a Noncompetition clause. Agreement ¶ 5. After his termination, Focal Point advised Czech that the two (2) year period in Section 5 was reduced to only one (1) year. Exhibit B. Further, Focal Point agreed to restrict the scope of Section 5 of Czech's Agreement restricting him from directly or indirectly:

> Hold[ing] or accept[ing] the same, similar or related position or job function that I held with Focal Point at any time during my employment with any Competitive Business (as defined in your agreement) either as an employee consultant or owner in the following jurisdictions, California, Illinois, Georgia, New York, Colorado, South Carolina, Texas, New Jersey, Massachusetts, Florida, Pennsylvania, Rhode Island, Maryland, Washington, D.C. Michigan or the Canadian Provinces of Ontario or British Columbia

Exhibit B.

24. The Agreement defines "Competitive Business" as:

> any business or enterprise which competes, directly or indirectly, with the Company, including but not limited to the business of designing, developing, tooling, manufacturing, assembling and selling recessed, surface and suspended architectural fluorescent, incandescent, LED, HID or cold cathode lighting equipment similar to those products found within the Focal Point line.

6

Agreement ¶ 1(d).

25. The Agreement provides that it shall be "governed and interpreted in accordance with the laws of the state of Illinois." Agreement ¶ 11.

26. In addition to Czech's Agreement, Focal Point has a Confidential Information Policy, attached hereto as Exhibit C, which requires that upon termination of employment:

> employees must deliver to [Focal Point] immediately any and all confidential information, whether stored electronically or in paper format, including but not limited to all copies of such documents prepared or produced in connection with their employment with the [Focal Point] that pertain to the [Focal Point's] business or the employee's services for the [Focal Point], whether made or compiled by the employee or furnished to the employee in connection with such services to the [Focal Point]. In addition, at termination, employees must return to the Company all of the [Focal Point's] non-confidential property, documents, or electronic information.

Exhibit C, p. 14.

**CZECH COVERTLY MISAPPROPRIATED A SIGNIFICANT QUANTITY OF FOCAL POINT'S CONFIDENTIAL RECORDS IMMEDIATELY BEFORE RESIGNING**

27. As the Vice President of Product Development and Design Engineer at Focal Point, Czech was involved in product research and development and therefore had knowledge of new lighting designs, concepts and other proprietary product ideas that Focal Point was routinely evaluating and implementing. Czech also had access to other highly confidential Focal Point information including patent development, lighting specifications and designs, vendor information, product cost and pricing, and internal market research.

28. By virtue of his position as the Vice President of Product Development and Design Engineer, Czech was granted privileged access to Focal Point's confidential business information. His responsibilities required that he have privileged access to an extensive quantity of confidential documents containing trade secrets and other confidential and proprietary information. Such

7

information includes, but is not limited to product development proposals, patent applications for Focal Point products, design specifications, client requirements and preferences, pricing information for current and prospective Focal Point vendors, and implementation details of solutions for current and prospective Focal Point clients (*e.g.*, design specifications for projects specific to clients, the costs to Focal Point for developing a specific design or solution for a client, *etc.*). Czech was never authorized to remove this confidential information from Focal Point or to use or disclose it outside Focal Point.

29. Czech also participated in senior management meetings with Focal Point's patent and intellectual property counsel where Focal Point's proprietary research and development issues regarding its products were discussed.

30. Prior to leaving Focal Point's employment effective April 12, and in furtherance of his intention to join DMF Lighting, Czech misappropriated a significant quantity of trade secrets and other confidential information belonging to Focal Point and targeted several of Focal Point's current and prospective product designs, not for the purpose of doing his job at Focal Point, but rather for his own gain and for use in his future employment with DMF Lighting, a clear competitor of Focal Point.

31. In the time since Czech's resignation, Focal Point has discovered, he began to surreptitiously download virtually all of Focal Point's trade secrets and confidential information his possession to a personal flash drive which he took home and has never disclosed or returned to Focal Point.

32. After Czech's termination, Focal Point's internal IT team and FTI Technology ("FTI"), a forensic technology independent expert, conducted an analysis of Czech's Focal Point laptop computer, corporate Apple iPad and corporate cellphone.

33. On January 19, 2019, Czech inserted a Samsung Fit flash drive with the USB controller serial number 0354618120004036 into his Focal Point laptop at 10:19:48 PM (UTC), which was assigned the drive letter "D:\". This was the oldest indication of this Samsung Fit flash drive being connected to Czech's Focal Point laptop. Based on the forensic analysis, it appears that Czech immediately copied his entire Documents folder (C:\Users\kczech\Documents\) from his Focal Point laptop.

34. On 1/20/19 6:34 PM UTC, Czech created an Outlook data file on the Samsung Fit flash drive, D:\backup.pst, and surreptitiously began copying emails, documents and files from his Focal Point laptop. This type of file would allow for storage of Czech's Focal Point email copied/moved from his live mailbox for offline access outside of Focal Point's network.

35. On February 12 and 13, 2019, Czech accessed a document titled "Ken Czech – bio updated 0114.doc" and "Ken Czech – bio updated 021219.doc".

36. On February 20, 2019, at 3:35 AM (UTC) Czech accessed the 147 Focal Point folders he had previously transferred to his personal Samsung Fit flash drive. Those folders included, but are not limited to:

- D:/backup.pst (Czech's entire Focal Point mailbox);
- D:/Documents/Budget (Focal Point budgeting information and files);
- D:/Documents/Patents (Focal Point's patent information and files);
- D:/Documents/Product Dev (Focal Point's product development files); and
- D:/Documents/Spec Sheets (Focal Point's product specification information and files)

37. On February 20, 2019, at 3:36 AM (UTC), Czech also accessed the Outlook data file, D:\backup.pst, which he had created the month prior. Czech also created and accessed on this day the Outlook data files, D:\inboxbackup.pst and D:\sentbackup.pst.

38. On February 22, 2019, Czech accessed and updated his resume using his Focal Point laptop computer, Ken Czech Resume Updated 0218-2.doc and Ken Czech Resume Updated 0912.doc.

39. On information and belief, on April 4, 2019, Czech received a draft contract for employment at DMF Lighting and began negotiating with his new employer.

40. Starting at around 9:30 PM (CT) on April 10, 2019 (2:30 AM (UTC) on 4/11/19), and less than 36 hours before Czech announced his intention to leave Focal Point, Czech accessed an Outlook data file, D:\newbackup.pst from the Samsung Fit flash drive, USB controller serial number 0354618120004036, and included Focal Point's confidential and trade secrets:

- Product designs and drawings for numerous Focal Point products;
- Patent correspondence and applications for newly developed Focal Point products;
- Research developed by Focal Point on various potential new products under development;
- Material distributed only to internal staff of Focal Point regarding new product development and research;
- Material distributed only to internal staff of Focal Point regarding next steps and timing of new products;
- Quotes and pricing information from vendors and suppliers of Focal Point for various components and parts;
- Cost bills of materials for Focal Point products; and
- Confidential information furnished to Focal Point by numerous applicants for positions in engineering and product development.

41. The Samsung Fit flash drive's first connection corresponds to the observed creation dates of the folders accessed from the D:\ volume and its last recorded removal occurs after the last observed interaction with the D:\ volume.

42. From the forensic analysis, the D:\ volume's PST file contents that Czech copied from Focal Point's email servers and placed on his Samsung Fit flash drive contained over 1,689 files of confidential information including documents, presentations and voicemails.

43. As for the two other Focal Point electronic devices used by Czech, Czech improperly deleted all the data on his Focal Point Apple iPad and corporate cellphone in clear violation of Focal Point's policies. Not only did Czech delete the data, he restored the devices to their factory settings, making it impossible for Focal Point to recover data that had been on those devices or trace the location of any data that had been located on those devices.

44. Immediately after resigning from Focal Point, Czech accepted a substantially similar position – Vice President of Product Development with Focal Point's competitor, DMF Lighting. (Available at https://www.linkedin.com/in/ken-czech-78497659 (Ken Czech, Vice President of Product Development at DMF Lighting, Chicago, Illinois).) Czech is working in Illinois for DFM Lighting.

45. Czech's misappropriation of Focal Point's trade secrets and other confidential information was part of a persistent, well-orchestrated campaign. Czech's employment at DMF Lighting breaches his Agreement and creates the likelihood of the inevitable disclosure of Focal Point confidential information.

46. Focal Point's trade secrets and other confidential information have been developed through considerable time, effort and expense in the operation of Focal Point's business. Further, these trade secrets and other confidential information are not publicly available and/or cannot be readily duplicated without involving considerable time, effort or expense.

47. Focal Point has taken reasonable steps to identify, protect and preserve the confidentiality of its confidential information as described in Paragraphs 9 through 13 of this Complaint.

48. Czech improperly acquired Focal Point's trade secrets and other confidential information not to serve Focal Point's business interests but instead for his own gain and, on information and belief, that of his future employer, DMF Lighting.

49. The trade secrets and confidential information Czech misappropriated prior to his resignation for the benefit of DMF Lighting consist of the exact categories of information Czech would need and use to effectively compete for customers against Focal Point on behalf of DMF Lighting (or another similarly situated Focal Point competitor).

50. Focal Point thus had no choice but to defend its trade secrets and/or the inevitable disclosure of its trade secrets by initiating this lawsuit and seeking appropriate injunctive and monetary relief.

### COUNT I
### Misappropriation of Trade Secrets in Violation of Defend Trade Secrets Act
### (18 U.S.C. § 1836 *et seq*.)

51. Focal Point incorporates paragraphs 1-50 by reference.

52. The documents and other information misappropriated by Czech contained significant and critical confidential and proprietary information relating to Focal Point's business. Such confidential and proprietary information is exclusively Focal Point's property.

53. The documents and other information stolen by Czech constitute "trade secrets," as defined in 18 U.S.C. § 1839(3), related to products and services used in, or intended for use in, interstate or foreign commerce.

54. Focal Point's trade secrets derive independent economic value from not being generally known to or readily ascertainable through proper means by competitors (like DMF Lighting) who can obtain economic value from the purposeful or inevitable disclosure or use of the information.

55. Focal Point has taken reasonable efforts to protect and maintain the confidentiality of its trade secrets.

56. Focal Point has not given express or implied consent to Czech to disclose or use Focal Point's trade secrets as set forth herein.

57. In violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, Czech misappropriated Focal Point's trade secrets and has refused to return them after termination of his employment.

58. Czech knew or had reason to know that he acquired knowledge of trade secrets under circumstances giving rise to a duty to maintain the secrecy of the trade secrets and/or to limit their use (*i.e.*, in the course of his employment by Focal Point). Czech stood in a position of trust to Focal Point and had contractual and legal duties to refrain from disclosing or using for his benefit, or that of a third party, Focal Point's trade secrets. These duties arise from the Agreement.

59. Czech, with the intent to convert trade secrets that are related to a service used in or intended for use in interstate or foreign commerce to the economic benefit of Focal Point, and intending or knowing that the offense will injure Focal Point knowingly engaged in the following conduct: (a) stole, or without authorization, removed or by fraud or deception obtained such information; and (b) without authorization copied, duplicated, downloaded, replicated, transmitted, delivered, sent, mailed, communicated or conveyed such information to himself with the intent to use on behalf of DMF Lighting.

60. Czech's improper acquisition and unauthorized use or disclosure, actual or threatened, violates the DTSA, 18 U.S.C. § 1836 *et seq.*, and was willful and malicious.

61. As a direct and proximate result of Czech's wrongful conduct, Focal Point has suffered irreparable injury. Unless Czech is enjoined from misappropriating, threatening to

misappropriate, and/or inevitably disclosing Focal Point's trade secrets, Focal Point will suffer irreparable harm for which there is no adequate remedy at law.

62. Focal Point is entitled to preliminary and permanent injunctive relief against further misappropriation of trade secrets.

63. Focal Point has suffered damages, and continues to be damaged, as a direct result of these actual and threatened breaches which include, but are not limited to, lost profits and attorneys' fees Focal Point has incurred and will incur to enforce its rights under the DTSA.

## COUNT II
### Misappropriation of Trade Secrets under the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 et seq.)

64. Focal Point incorporates paragraphs 1-63 by reference.

65. Focal Point owns confidential and proprietary information constituting "trade secrets" as defined in the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 *et seq.*

66. Czech had regular access to such trade secrets throughout the course of his employment with Focal Point.

67. Czech wrongfully took and continues to possess Focal Point's trade secrets without authorization, including but not limited to:

- Product designs and drawings for numerous Focal Point products;
- Patent correspondence and applications for newly developed Focal Point products;
- Research developed by Focal Point on various potential new products under development;
- Material distributed only to internal staff of Focal Point regarding new product development and research;
- Material distributed only to internal staff of Focal Point regarding next steps and timing of new products;
- Quotes and pricing information from vendors and suppliers of Focal Point for various components and parts;
- Cost bills of materials for Focal Point products; and

- Confidential information furnished to Focal Point by numerous applicants for positions in engineering and product development.

68. Czech transferred Focal Point's trade secrets to his Samsung Fit flash drive, USB controller serial number 0354618120004036, an external storage drive.

69. Czech has used, disclosed or threatened to use or disclose Focal Point's trade secrets with full knowledge that this information was improperly obtained and acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

70. Czech's retention, use and disclosure of Focal Point's trade secrets were not authorized by Focal Point, and directly contravened the Agreement and Focal Point's policies.

71. Focal Point's trade secrets are sufficiently secret to derive economic value from not being generally known to other persons or entities who can obtain economic value from their disclosure or use.

72. Focal Point's trade secrets are the subject of efforts to maintain secrecy or confidentiality that are reasonable under the circumstances.

73. Czech's unauthorized retention, use and disclosure, actual or threatened, violate the Illinois Trade Secrets Act.

74. Further, due to Czech's frequent access to and intimate knowledge of Focal Point's trade secrets, there is a high degree of probability that he will continue to inevitably disclose Focal Point's trade secrets in his employment as Vice President of Product Development at DMF Lighting.

75. Focal Point has suffered, and will continue to suffer, damages as a result of Czech's misappropriation and disclosure of Focal Point's trade secrets.

76. Czech's misappropriation and use of Focal Point's trade secrets, either intentionally or as the result of inevitable disclosure, was and is willful and malicious. Czech's misappropriated

15

and used Focal Point's trade secrets with full knowledge and understanding that such conduct violated Focal Point's rights and the protections provided by the ITSA, and Czech did so in order to realize substantial monetary benefits at the expense of Focal Point.

## COUNT III
### Breach of the Confidentiality Agreement

77. Focal Point incorporates paragraphs 1-76 by reference.

78. The Agreement forms a valid and enforceable contract.

79. Focal Point has fully performed every obligation it owed to Czech under the Agreement.

80. The Agreement requires Czech to keep Focal Point's confidential information strictly confidential and prohibits Czech from using, disclosing, duplicating, recording or in any other manner reproducing in whole or in part any confidential information, and not soliciting Focal Point customers and prospects for which he had any responsibility.

81. The Agreement, as amended, prohibits Czech from holding or accepting the same position or job function that he held at Focal Point with any competitive business either as an employee consultant or owner in the following jurisdictions, California, Illinois, Georgia, New York, Colorado, South Carolina, Texas, New Jersey, Massachusetts, Florida, Pennsylvania, Rhode Island, Maryland, Washington, D.C. Michigan or the Canadian Provinces of Ontario or British Columbia.

82. Czech breached the Agreement by (a) retaining Focal Point's confidential information following his termination, (b) using Focal Point's confidential information for purposes other than fulfilling work performed by Focal Point, and (c) performing the functions and job responsibilities he performed at Focal Point with a competitive business, DMF Lighting from Illinois.

83. Czech's breach of the Agreement has caused Focal Point to suffer injury.

84. Unless Czech is preliminarily and permanently enjoined from violating the terms of the Agreement, Focal Point will be irreparably harmed. No adequate remedy at law exists for this breach.

## COUNT IV
### Breach of Fiduciary Duty

85. Focal Point realleges and restates paragraphs 1–84 as if fully restated herein.

86. Czech, as an employee of the Focal Point, owed a fiduciary duty of loyalty to Focal Point. Focal Point placed Czech in a position of trust and confidence and provided him with protectable, proprietary, and confidential information to use solely in connection with his employment and work on behalf of the Focal Point's product designs, patent applications and vendors.

87. Czech's duty of loyalty included the obligation to deal honestly, loyally, fairly, and openly with the Focal Point and to not usurp business opportunities and vendors.

88. While still employed by Focal Point, Czech breached his duty of loyalty to the Company by, among other wrongful acts, (a) failing to devote his entire time, energy, attention, and loyalty to the business of Focal Point, (b) preparing to divert and diverting Focal Point business to a business competitive with that of Focal Point; and (c) commencing competition on behalf of a competing entity.

89. Czech's breaches were intentional, willful, and without just cause.

90. By reason of the foregoing, Czech has directly and proximately caused injury to Focal Point, and Focal Point has suffered, and continues to suffer, substantial injury as a result of Czech's actions.

Dated: July 30, 2019

Respectfully submitted,

FOCAL POINT, LLC

By: /s/ William G. Miossi
      One of Its Attorneys

William G. Miossi
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600
(312) 558-5700 (fax)

Mary M. Lenahan
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, D.C. 20006
(202) 282-5661
(202) 282-5100
(*Pro hac vice* admission forthcoming)

*Attorneys for Plaintiff*